Filed 3/7/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TOM PIPLACK et al., | |
| Plaintiffs and Respondents, | G061098 |
| v. | (Super. Ct. No. 30-2019-01114510) |
| IN-N-OUT BURGERS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Randall J. Sherman, Judge. Reversed in part and remanded in part. Motion to dismiss. Denied. Request for judicial notice. Denied. Motion to admit new evidence and determine facts on appeal. Denied.

Littler Mendelson, Fermin H. Llaguno, and Michael L. Kibbe for Defendant and Appellant.

Aiman-Smith & Marcy, Randall B. Aiman-Smith, Reed W. L. Marcy, Hallie Von Rock, and Brent A. Robinson for Plaintiffs and Respondents.

\*          \*          \*

Defendant In-N-Out Burgers appeals from the trial court's denial of its motion to compel arbitration of the claims of plaintiffs Tom Piplack and Donovan Sherrod for penalties under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.; PAGA). Defendant argues the recent decision of the United States Supreme Court in *Viking River Cruises, Inc. v. Moriana* (2022) ___ U.S. ___ [142 S.Ct. 1906] (*Viking*), rendered while defendant's appeal was pending before this court, requires plaintiffs' individual PAGA claims to be arbitrated and all remaining representative claims dismissed for lack of standing.[1] Plaintiffs contend the agreement does not require arbitration of individual PAGA claims, defendant waived its right to arbitration by participating in trial proceedings, plaintiff Sherrod is not bound by the arbitration agreement because he entered it before reaching the age of majority and disaffirmed it after reaching that age, and that plaintiffs have standing to pursue representative PAGA claims in court even if their individual claims are sent to arbitration.

We conclude the arbitration agreements require individual PAGA claims to be arbitrated and defendant did not waive its right to compel arbitration. Accordingly, as to plaintiff Piplack, we reverse—his individual PAGA claim must be arbitrated. As to plaintiff Sherrod, we remand for the trial court to consider his arguments regarding disaffirmance in the first instance, as those arguments were not properly briefed or decided in the trial court because they were irrelevant under pre-*Viking* law.[2]

_____

[1] Prior to the issuance of the *Viking* opinion, plaintiffs moved to dismiss defendant's appeal as frivolous. We elected to consider that motion in connection with our decision on the merits and now deny it. In light of the pendency of the *Viking* case, even before the Supreme Court's decision, defendant's appeal presented a good faith argument for a change in the law.

[2] We deny plaintiffs' related motion to admit new evidence and determine facts on appeal, as we decline to reach the merits of disputed issues over plaintiff Sherrod's alleged disaffirmance of the arbitration agreement and conclude plaintiffs' proffered new evidence is irrelevant to our determination on the waiver question. We deny plaintiffs' request for judicial notice for the same reason.

The standing question associated with the representative PAGA claims presents us with a dilemma. On the one hand, the California Supreme Court, in the case *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73 (*Kim*), provided us with a recent, definitive, and (most importantly) binding interpretation of the relevant portions of PAGA controlling standing. We read *Kim* as recognizing two (and only two) requirements for standing under PAGA,[3] neither of which is affected in any way by moving the individual component of a PAGA claim to arbitration. On the other hand, in *Viking*, the United States Supreme Court, citing the very same *Kim* case, concluded a plaintiff whose individual PAGA claim is compelled to arbitration loses standing to pursue representative PAGA claims. (*Viking*, *supra*, ___ U.S. at p. ___ [142 S.Ct. at p. 1925].)

Despite the deep deference we afford the United States Supreme Court, even on purely state law questions where the United States Supreme Court's opinions are only persuasive, not binding, we conclude we must follow *Kim* and hold that plaintiffs retain standing to pursue representative PAGA claims in court even if their individual PAGA claims are compelled to arbitration. We simply cannot reconcile the *Viking* decision's standing analysis with the *Kim* decision.

FACTS AND PROCEDURAL HISTORY

Defendant is a restaurant chain, operating in California and elsewhere. Plaintiffs are former employees of defendant. During their employment, both plaintiffs signed arbitration agreements with defendant. Those agreements required plaintiffs to pursue any claims arising out of their employment with defendant through arbitration under the Federal Arbitration Act (9 U.S.C. § 1, et seq.; FAA). The agreements also

---

[3] Those requirements are that the plaintiff be someone "'who was employed by the alleged violater' and 'against whom one or more of the alleged violations was committed.'" (*Kim*, *supra*, 9 Cal.5th at pp. 83-84.)

contained a private attorney general waiver, which provided, "There will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general action ('Private Attorney General Waiver')." This waiver was severable under two different clauses. The first provided the waiver was severable "in any case in which (1) the dispute is filed as a private attorney general action and (2) a civil court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable. In such instances, any private attorney general claim must be litigated in a civil court of competent jurisdiction." The second stated, "The . . . Private Attorney General Waiver . . . shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration."

In late 2019, plaintiffs sued defendant for penalties under PAGA based on defendant's alleged practices of requiring employees to purchase and wear certain articles of clothing without reimbursing them and requiring employees to purchase and utilize special cleaning products to maintain these clothes, again without reimbursement. As is typical for a PAGA action, plaintiffs' suit was brought on their own behalf and on behalf of other similarly aggrieved employees.

Initially, the case proceeded in relatively ordinary fashion, with the filing of answers, demurrers, amended complaints, and a discovery motion. However, in February 2022, defendant filed a motion to compel arbitration. Defendant explained the delayed timing of its motion by referring to a pending United States Supreme Court case, *Viking*, in which defendant indicated it expected the United States Supreme Court to overturn or materially alter the California Supreme Court's so-called *Iskanian* rule,[4] which barred arbitration of PAGA claims. Just a few days after the filing of the motion, before

_____

[4] (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*).)

4

plaintiffs could file opposition to the motion, the trial court summarily denied it under *Iskanian*. Defendant timely appealed.

## DISCUSSION

*The Recent History of Group Employment Litigation in California and Arbitration*

California's Labor Code "contains a complex scheme for timely compensation of workers, deterrence of abusive employer practices, and enforcement of wage judgments." (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1157.) The Labor Code imposes civil penalties and a right for employees to recover attorney fees for violations of many of its rules. (See, e.g., Lab. Code, §§ 203, 218.5, 226.)

By at least the mid-2000s, it had become clear that "class actions play[ed] an important function in enforcing [the Labor Code] by permitting employees who are subject to the same unlawful payment practices a relatively inexpensive way to resolve their disputes." (*Gentry v. Superior Court* (2007) 42 Cal.4th 443, 459 (*Gentry*), disapproved by *Iskanian*, *supra,* 59 Cal.4th 443.) In short, employees of large employers with standardized practices allegedly violating the Labor Code could band together, making it economically viable to pursue claims that might have been too small for each of them to pursue individually.

To avoid such class actions, some employers began including arbitration agreements containing class action waivers in their employment contracts. In *Gentry*, the California Supreme Court held these provisions were, at least in some instances, unenforceable as contrary to California public policy. (*Gentry*, *supra,* 42 Cal.4th at p. 457.) However, in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333 (*Concepcion*), the United States Supreme Court held this rule was preempted by the FAA.

After *Concepcion*, class actions were now effectively unavailable against employers utilizing mandatory arbitration agreements containing class action waivers. In

5

lieu of class actions, some employee-plaintiffs turned to PAGA, which permitted them to bring an action for certain civil penalties (and attorney fees) on behalf of both themselves and other similarly situated employees. In *Iskanian*, the California Supreme Court held an employee cannot waive his or her right to file a PAGA claim, or to file the representative portion of a PAGA action on behalf of other similarly situated employees. (*Iskanian*, *supra*, 59 Cal.4th at pp. 382-384.) The court also concluded PAGA actions could not be split into "individual" and "representative" components (the individual component corresponding to the alleged violations experienced by the plaintiff, and the representative component corresponding to the alleged violations experienced by the other employees) in order to compel arbitration of the individual component. (*Id.* at pp. 383-384.) The California Supreme Court also considered whether these rules were preempted by the FAA but concluded they were not. (*Iskanian*, *supra*, at pp. 384-389.)

After *Iskanian*, it was settled law in California that PAGA claims could not be compelled to arbitration, in whole or in part. However, that rule would last only a few years. In *Viking*, the United States Supreme Court considered a challenge to the *Iskanian* rule based on the same FAA preemption theory the California Supreme Court had rejected. (*Viking*, *supra*, ___ U.S. at pp. ___ [142 S.Ct. at pp. 1916-1917].) The majority reached a mixed result, concluding the FAA preempted only the portion of *Iskanian* forbidding splitting PAGA actions into individual and representative components, but not the portion prohibiting waiver of the right to pursue representative PAGA actions. (*Viking*, *supra*, ___ U.S. at pp. ___ [142 S.Ct. at pp. 1922-1924].) Consequently, the FAA required severance and separate arbitration of the individual component of the plaintiff's PAGA claim. (*Viking*, *supra*, ___ U.S. at p. ___ [142 S.Ct. at p. 1925].)

The majority also concluded that, now that the plaintiff's individual PAGA claim was to be compelled to arbitration, the plaintiff lacked standing to pursue a representative PAGA claim in court on behalf of other employees. (*Viking River Cruises, Inc. v. Moriana*, *supra*, ___ U.S. at p. ___ [142 S.Ct. at p. 1925].) The majority cited

6

*Kim, supra*, 9 Cal.5th 73 for this conclusion, as PAGA standing is a pure question of state law, upon which the California Supreme Court, not the United States Supreme Court, has the last word. (*Viking*, at p. ___ [142 S.Ct. at p. 1925].) One of the five votes for the majority, Justice Sotomayor, also wrote a concurrence stressing that her joinder in the majority was premised on the understanding that California courts would ultimately decide the standing question. (*Id.* at p. ___ (conc. opn. of Sotomayor, J.) [142 S.Ct. at p. 1925 (conc. opn. of Sotomayor, J.)].)

*Viking*'s modification to the rules set forth by the California Supreme Court in *Iskanian* created the present rule:  arbitration agreements between employers and employees that require arbitration of the individual portion of a PAGA claim are enforceable, but arbitration agreements that require arbitration (or waiver) of the representative portion of a PAGA claim are not enforceable.

*Defendant's Arbitration Agreement*

Even after *Viking*, plaintiffs argue defendant's arbitration agreement requires that all their claims be heard in court.  Specifically, plaintiffs point to section 7(b) of the agreement, which provides, "There will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general action ('Private Attorney General Waiver').  The Private Attorney General Waiver shall be severable from this Agreement in any case in which (1) the dispute is filed as a private attorney general action and (2) a civil court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable.  In such instances, any private attorney general claim must be litigated in a civil court of competent jurisdiction."

Plaintiffs contend the prerequisites for application of this provision have been met; they filed this action as a "private attorney general action," and the trial court found the waiver unenforceable.  Consequently, plaintiffs argue, the case "must be litigated in a civil court of competent jurisdiction," not arbitrated.

7

We disagree. The key point is the meaning of the phrase "a private attorney general action." Plaintiffs understand that phrase to include any PAGA claim, and under *Iskanian*'s approach to PAGA, that reading would have been plausible. But *Viking* changes the analysis. After *Viking*, every PAGA action is properly understood as a combination of two claims: an "individual" claim, arising from the Labor Code violations suffered by the plaintiff or plaintiffs themselves, and a "representative" claim, arising from violations suffered by other employees. By virtue of FAA preemption, these claims are severable from one another, and the "individual" claim is arbitrable, even if the state, which holds a 75 percent interest in any civil penalties recovered, does not consent to or participate in the arbitration. Thus, the individual claim is "individual" within the meaning of defendant's arbitration agreement, and only the "representative" claim is a true qui tam, or "private attorney general," action. And the agreement makes clear, "The . . . Private Attorney General Waiver . . . shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration."

Accordingly, we conclude defendant's arbitration agreement follows *Viking*'s structure by compelling plaintiffs' PAGA claims to arbitration and requiring the remaining representative claims to be litigated in court.

*Waiver*

Next, plaintiffs argue defendant waived its right to arbitrate by delaying seeking arbitration, participating in litigation in the trial court, omitting arbitration as an affirmative defense in its answer to plaintiffs' first amended complaint, and engaging in settlement negotiations in this and other PAGA cases. As discussed above, the trial court did not reach this issue, so plaintiffs ask us to decide it in plaintiffs' favor for the first time on appeal.

8

We conclude, however, that defendant has not waived its right to arbitrate as a matter of law. In *Iskanian*, in addition to the PAGA issues discussed above, the California Supreme Court also considered whether the defendant had waived its right to compel arbitration (and prevent certification of a class action) failing to pursue its arbitration rights until the United States Supreme Court issued *Concepcion*. (*Iskanian*, *supra*, 59 Cal.4th at pp. 374-378.) The defendant in *Iskanian* initially filed a petition to compel arbitration at the outset of the case, then withdrew it after the California Supreme Court issued *Gentry*. (*Iskanian*, at p. 376.) But when the United States Supreme Court issued *Concepcion* and effectively invalidated *Gentry*, the defendant renewed its motion for arbitration, citing the change in the law. (*Iskanian*, at p. 376.) The California Supreme Court held this delay, and the cost of the related intervening proceedings in the trial court, could not constitute waiver because the failure to file a "futile" motion to compel arbitration was not an *unreasonable* delay. (*Id.* at pp. 376-377.)

Similarly, in the present case, defendant raised its right to arbitrate as soon as it had any chance of success.[5] The fact that defendant vigorously defended itself in the trial court makes no difference because the relevant question is whether there was any *unreasonable* delay. The omission of arbitration as an affirmative defense to plaintiffs' first amended complaint is also not a waiver of arbitration for precisely the same reason, and in any event, defendant raised arbitration as an affirmative defense to plaintiffs' second amended complaint.

Nor does plaintiffs' invocation of *Morgan v. Sundance, Inc.* (2022) ___ U.S. ___ [142 S.Ct. 1708] alter the "futility" rule from *Iskanian*. In *Morgan*, the United States Supreme Court held waiver of a right to arbitrate under the FAA did not depend on

___

[5] If anything, defendant moved *too* quickly by seeking to compel arbitration before the United States Supreme Court could decide *Viking*. In the absence of *Viking*, the trial court had no choice but to deny defendant's motion, as *Iskanian* remained good law and prohibited arbitration of any PAGA claim.

a showing of prejudice, but rather arose from any "'intentional relinquishment or abandonment'" of the right to arbitrate. (*Morgan*, at p. ___ [142 S.Ct. at pp. 1713-1714].) This rule tracks closely with the reasoning of *Iskanian*. Failing to make a futile motion to compel arbitration surely does not constitute an intentional relinquishment of the right to compel arbitration should the law change.

Plaintiffs' arguments regarding defendant's settlement negotiations are also unavailing. Settlement negotiations are not inconsistent with a right to arbitration, do not create unreasonable delay (or, so far as we can tell, any delay), and again do not constitute an intentional relinquishment or abandonment of any rights.

*Sherrod's Disaffirmance of the Arbitration Agreement*

Even if the arbitration agreement is enforceable and defendant did not waive its rights, plaintiffs still contend plaintiff Sherrod's individual claim may not be compelled to arbitration because he entered the arbitration agreement before reaching the age of majority and disaffirmed the agreement after turning 18. Again, plaintiffs ask us to decide this question in the first instance, as they were unable to raise the issue in the trial court due to the trial court's summary denial of defendant's motion to compel arbitration. We decline to do so, as it is evident from the parties' briefing that factual disputes exist on this question. Instead, we remand to the trial court for further proceedings on this issue with respect to plaintiff Sherrod.

As to plaintiff Piplack, having dispensed with his defenses to arbitration of his individual claim, we reverse and remand for the trial court to compel his individual claim to arbitration.

*Standing to Pursue Representative Claims*

In addition to compelling arbitration of plaintiffs' individual PAGA claims, defendant asks us to instruct the trial court to dismiss plaintiffs' representative PAGA

10

claims, as suggested by the United States Supreme Court in *Viking*. In response, plaintiffs argue we are not bound by *Viking*, and should instead follow *Kim* and allow plaintiffs to pursue their representative claims in court even if their individual claims are compelled to arbitration.

We begin with the basic rule set forth by the California Supreme Court in *Kim*: "The plain language of [Labor Code] section 2699(c) has only two requirements for PAGA standing. The plaintiff must be an aggrieved employee, that is, someone 'who was employed by the alleged violator' and 'against whom one or more of the alleged violations was committed.'" (*Kim*, *supra*, 9 Cal.5th at pp. 83-84.) These are the only requirements. A plaintiff whose individual claims are barred by the statute of limitations can nevertheless constitute an "aggrieved employee" for PAGA purposes and maintain a representative action. (*Johnson v. Maxim Healthcare Services, Inc.* (2021) 66 Cal.App.5th 924, 930.) It is not even necessary that the plaintiff have an unredressed claim or injury at all; the plaintiff in *Kim* settled all his individual claims. (*Kim*, *supra*, at p. 82.) In short, paring away the plaintiff's individual claims does not deprive the plaintiff of standing to pursue representative claims under PAGA, so long as the plaintiff was employed by the defendant and suffered one or more of the alleged violations.

We now reproduce *Viking*'s analysis of the standing question, in full: "The remaining question is what the lower courts should have done with [the plaintiff's] non-individual claims. Under our holding in this case, these claims may not be dismissed simply because they are 'representative.' *Iskanian*'s rule remains valid to that extent. But as we see it, PAGA provides no mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim has been committed to a separate proceeding. Under PAGA's standing requirement, a plaintiff can maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action. See Cal. Lab. Code Ann. §§ 2699(a), (c). When an employee's own dispute is pared away from a PAGA action, the employee is no different from a member

11

of the general public, and PAGA does not allow such persons to maintain suit. See *Kim*, [*supra*, 9 Cal.5th at p. 90] ('PAGA's standing requirement was meant to be a departure from the "general public" . . . standing originally allowed' under other California statutes.) As a result, [the plaintiff] lacks statutory standing to continue to maintain her non-individual claims in court, and the correct course is to dismiss her remaining claims." (*Viking, supra*, ___ U.S. at p. ___ [142 S.Ct. at p. 1925].)

This places us on the horns of a dilemma. On the one hand, the *Kim* rule is quite clear.[6] Regardless of whether plaintiffs' individual claims are compelled to arbitration, they nevertheless were employed by the alleged violator and claim that one or more of the alleged violations were committed against them. Thus, even with their individual claims forced into a separate forum (or pared away), they satisfy the test for standing described by the California Supreme Court, which binds us.

On the other hand, the United States Supreme Court cited *Kim* in *Viking* and came to the opposite conclusion. As defendant points out, we afford the United States Supreme Court deep deference, even on questions of state law, where the California Supreme Court has final say. (*People v. Houston* (1986) 42 Cal.3d 595, 609-610.) But, absent some means of harmonizing *Viking* with *Kim*, we must follow *Kim*.

Defendant offers a tempting rationalization for the *Viking* court's conclusion by pointing to certain language in Labor Code section 2699, subdivision (a). Defendant argues subdivision (a) only authorizes an aggrieved employee to file an action "on behalf of himself or herself *and* other current or former employees [under PAGA]."

---

[6] So, too, is the underlying statute, Labor Code section 2699, subdivisions (a) and (c). Subdivision (a) authorizes any "aggrieved employee" to bring suit, and subdivision (c) defines "aggrieved employee" as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." It says nothing about a continuing injury, a right to bring an individual claim, or arbitration.

Thus, defendant argues, a plaintiff who cannot maintain an individual PAGA claim also cannot maintain a representative PAGA action.

But *Kim* forecloses even this line of reasoning. In addition to its standing arguments, the defendant in *Kim* sought to apply the doctrine of claim preclusion to bar the plaintiff from pursuing a PAGA action after having dismissed his individual claims as part of a settlement. The California Supreme Court held this doctrine could not apply because the individual claims, *which had been sent to arbitration*, and the PAGA action were part of the "*same lawsuit*." (*Kim*, *supra*, 9 Cal.5th at p. 92.) The same reasoning applies here. Even though *Viking* requires the trial court to bifurcate and order individual PAGA claims to arbitration when an appropriate arbitration agreement exists, the individual PAGA claims in arbitration remain part of the same lawsuit as the representative claims remaining in court. Thus, plaintiffs are pursuing a single PAGA action "on behalf of [themselves] and other current or former employees," albeit across two fora.

Lastly, we find defendant's citations to legislative history on this point unpersuasive. The legislative history cited by defendant (namely, various committee analyses generally discussing the standing requirement and its distinction from "general public" standing) is the same as that considered by the California Supreme Court in *Kim*,[7] and it does not reach any further in this case than it did in *Kim*. Moreover, legislative history is doubly unpersuasive in the present context, as PAGA and its legislative history predate not only *Viking*, but also *Iskanian*, *Concepcion*, and even *Gentry*. The general discussion of standing in the legislative history is simply too far removed from the complex procedural question we now face to be of any value.

We recognize this holding may create complications for future PAGA litigation, which is already complicated enough as it is. Nevertheless, as a matter of stare

_____

[7] (See *Kim*, *supra*, 9 Cal.5th at pp. 90-91.)

13

decisis, we are bound to follow *Viking* on FAA preemption and *Kim* on PAGA standing. Thus, trapped between Scylla and Charybdis, we have charted the only course we can.[8] To the extent that the resulting complications are undesirable, we leave resolution of them to Congress or the Legislature.

## DISPOSITION

The trial court's order denying defendant's motion to compel arbitration is vacated. The matter is remanded to the trial court to render factual findings in the first instance on issues surrounding plaintiff Sherrod's alleged disaffirmance of the arbitration agreement upon reaching the age of majority, to compel plaintiff Piplack's individual PAGA claim to arbitration, and to deny defendant's motion to compel arbitration as to plaintiffs' representative PAGA claims.

In the interests of justice, the parties shall each bear their own costs on appeal.

SANCHEZ, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

DELANEY, J.

---

[8] (See Homer, "The Odyssey," book XII.)

14